CHANDLER, Justice,
dissenting:
¶ 24. Because I would find that intoxi-lyzer calibration records are the functional equivalent of live, in-court testimony, I would hold that they are testimonial in nature, and that their admission at Mat-thies’s trial violated the Confrontation Clause of the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. I would reverse and remand for a new trial.
¶ 25. In Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars admission of out-of-court, “testimonial” hearsay statements against a criminal defendant, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Id. at *845 68, 124 S.Ct. at 1374. The “core class of ‘testimonial’ statements” under the Confrontation Clause includes “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Id. at 52, 124 S.Ct. at 1364. In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the Court found that three sworn “certificates of analysis” reporting that a seized substance was found to be cocaine were within the “core class of ‘testimonial’ statements” covered by the Confrontation Clause. Id. at 2532. The Court found that the affidavits provided testimony against the defendant, that the affidavits did not qualify as business records because the primary reason for their creation was for use in court, and that confrontation is a means of assuring accuracy in forensic analysis. Id. at 2533, 2538, 2536. The Court held that “[t]he Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error.” Id. at 2542.
¶ 26. Applying Melendez-Diaz, I would find that the calibration records of the intoxilyzer machine were testimonial in nature. As in Melendez-Diaz, the calibration records provided testimony against Matthies. Mississippi Code Section 63-11-19 provides that “[t]he State Crime Laboratory shall make periodic, but not less frequently then quarterly, tests of the ... machines ... used in making chemical analysis of a person’s breath as shall be necessary to ensure the accuracy thereof, and shall issue its certificate to verify the accuracy of the same.” Miss.Code Ann. § 63-11-19 (Supp.2011). The calibration records for the machine used in testing the defendant’s blood-alcohol level are of central importance to the prosecution of every DUI case involving such a test. This Court has held that intoxilyzer results are inadmissible without evidence establishing proper calibration because “there is no support for the accuracy of [intoxilyzer] results absent evidence of proper certification.” Johnston v. State, 567 So.2d 237, 239 (Miss.1990). In numerous cases, the question of whether a testing device was properly calibrated has been a hotly litigated, outcome-determinative issue. See Johnston, 567 So.2d at 239; McIlwain v. State, 700 So.2d 586, 591 (Miss.1997); Young v. City of Brookhaven, 693 So.2d 1355, 1361-62 (Miss.1997); Dobbins v. City of Starkville, 938 So.2d 296, 297 (Miss.Ct. App.2006).
¶ 27. Moreover, the certificates of calibration were created under circumstances that would “lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Crawford, 541 U.S. at 52,124 S.Ct. at 1354. Section 63-11-19 requires the calibration of an intoxilyzer machine to occur at least quarterly, with a certificate to issue “to verify the accuracy of the same.” Miss. Code Ann. § 63-11-19 (Rev. 2004). Proof that an intoxilyzer was properly calibrated is a foundation for the admission of intoxi-lyzer test results. Johnston, 567 So.2d at 239. Thus, calibration records are prepared and kept in anticipation of litigation, under circumstances that would lead an objective witness to believe they would be used at a later trial. Crawford, 541 U.S. at 52,124 S.Ct. at 1354.
¶ 28. Another factor supporting the conclusion that calibration records are testimonial is that, as Melendez-Diaz recognizes, forensic analysis is subject to error that may be revealed in cross-examination. Melendez-Diaz, 129 S.Ct. at 2536. “Forensic evidence is not uniquely immune from the risk of manipulation.” Id. “Serious deficiencies have been found in the forensic evidence used in criminal trials.” *846 Id. at 2537. The Court recognized that these deficiencies can be caused by fraudulent or incompetent analysts, or those under pressure from law enforcement. Id. The solution to these intrinsic problems is testing the evidence “in the crucible of confrontation,” because “confrontation is one means of assuring accurate forensic analysis.” Id. at 2536, 2537. I find that this analysis aptly applies to those who calibrate intoxilyzer machines, in addition to those who perform the actual testing. Cross-examination may reveal the lack of proper training or a deficiency in judgment of the individual who calibrated the machine. See Melendez-Diaz, 129 S.Ct. at 2537.
¶ 29. The Court in Melendez-Diaz further found that the affidavits in question were not business records that are exempt from Confrontation Clause scrutiny. Id. at 2538. Even if a document is kept in the regular course of business, “if the regularly conducted business activity is the production of evidence for use at trial,” they are subject to the Confrontation Clause. Id. By statute, intoxilyzer calibration records are prepared by personnel at the State Crime Laboratory. Miss.Code Ann. § 63-11-19 (Rev. 2004). These records are prepared and kept in anticipation of litigation. See Johnston, 567 So.2d at 239 (proof of calibration of an intoxilyzer machine is foundational to the admission of test results). As another court that reached the same conclusion has recognized, “[calibration] records lack the presumption of neutrality typical business records enjoy because they are created by law enforcement personnel for law enforcement personnel and therefore may not be prepared with the same objectivity as records created by a third party truly indifferent to the outcomes of criminal prosecutions.” People v. Carreira, 27 Misc.3d 293, 893 N.Y.S.2d 844 (N.Y.City Ct.2010). Therefore, calibration records are not “business records” that are exempt from Confrontation Clause scrutiny.
¶ 30. I address the majority’s reliance on a footnote in the Melendez-Diaz opinion. This footnote rejected the notion that “anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution’s case.” Melendez-Diaz, 129 S.Ct. at 2532 n. 1 (emphasis added). The footnote goes on to state that “[a]dditionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.” Id. (emphasis added). I note that the Court added this footnote in response to the dissenting opinion’s accusation that the majority’s analysis would require live testimony from the person who had calibrated the machine, as well as all other persons involved in the test.[1] Contrary to the majority’s reasoning, the footnote did not create a blanket rule of admissibility for any hearsay evidence relevant to establishing the accuracy of a testing device. It *847 merely stated that such evidence will not be deemed testimonial in every case. Id.
¶ 31. Additionally, Article 3, Section 26 of the Mississippi Constitution secures a right of the accused “to be confronted by the witnesses against him.” Miss. Const, art. 3, § 26. The decisions of the United States Supreme Court do not restrict rights afforded by the Mississippi Constitution. “It is a basic principle of our Federal Republic that a sovereign state may place greater restrictions on the exercise of its own power than does the Federal Constitution.” McCrory v. State, 342 So.2d 897, 900 (Miss.1977). I would find that, because intoxilyzer calibration records are prepared and kept in anticipation of litigation, under circumstances that would lead an objective witness to believe they would be available for use at a later trial, they are testimonial in nature and their admission at Matthies’s trial violated Article 3, Section 26.
¶ 32. It is a fact that intoxilyzer calibration records are central to most DUI prosecutions; without these records, the intoxi-lyzer test results, which are often the most probative evidence against the defendant, are inadmissible. Johnston, 567 So.2d at 239. In my opinion, intoxilyzer calibration records are an obvious substitute for live testimony, and they are testimonial in nature. Because I would reverse and remand for a new trial, I respectfully dissent.
DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.

. The dissent specifically found that a certificate of calibration would be testimonial under Crawford v. Washington, stating:
Consider the independent contractor who has calibrated the testing machine. At least in a routine case, where the machine’s result appears unmistakable, that result’s accuracy depends entirely on the machine's calibration. The calibration, in turn, can be proved only by the contractor’s certification that he or she did the job properly. That certification appears to be a testimonial statement under the Court’s definition: It is a formal, out-of-court statement, offered for the truth of the matter asserted, and made for the purpose of later prosecution. It is not clear, under the Court's ruling, why the independent contractor is not also an analyst.
Melendez-Diaz, 129 S.Ct. at 2545 (Kennedy, J., dissenting) (citation omitted).